## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**AMARIS RAMOS AND PEDRO ARCE,** as
Co-Administrators of the **ESTATE OF**
**PEDRO ARCE, JR.,** and in their own right,
232 Meridian Avenue
Scranton, PA 18504
                              **Plaintiffs**

                v.

**UNITED STATES OF AMERICA**

**MOSES TAYLOR HOSPITAL**
700 Quincy Avenue
Scranton, PA 18510

**SCRANTON QUINCY HOSPITAL**
**COMPANY, LLC**
700 Quincy Avenue
Scranton, Pennsylvania  18510

**MICHAEL RYAN, D.O.**
c/o Geisinger Clinic
100 North Academy Avenue
Danville, PA 17822

**GEISINGER COMMUNITY MEDICAL**
**CENTER**
1800 Mulberry Street
Scranton, PA 18510

**GEISINGER MEDICAL CENTER**
100 North Academy Avenue
Danville, PA 17822

**GEISINGER CLINIC**
100 North Academy Avenue
Danville, PA 17822

**ANTHONY SAUTER, M.D.**
c/o Moses Taylor Hospital
700 Quincy Avenue
Scranton, PA 18510
                              **Defendants.**

**CIVIL ACTION**
**NO.**
3:16-CV-924

**JURY TRIAL DEMANDED**

**MEDICAL PROFESSIONAL**
**LIABILITY ACTION**

**CIVIL ACTION COMPLAINT**

1

## COMPLAINT

Plaintiffs, Amaris Ramos and Pedro Arce, as Co-Administrators of the Estate of Pedro Arce, Jr., and in their own right, file this complaint against the Defendants named below and allege as follows:

## JURISDICTION AND VENUE

1.     This case sounding in medical malpractice involves a claim for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. § 1346.  Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1346, et seq. (FTCA litigation), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

3.     After initially filing suit in the Lackawanna County Court of Common Pleas on November 24, 2014 (Ramos, et al. v. Ventura, et al., No. 14-cv-6590), the action was removed to the United States District Court for the Middle District of Pennsylvania on or about April 16, 2015 (Docket No. 3:15-00749).

4.     On or about October 15, 2015, Plaintiffs placed the United States Department of Health and Human Services, 330 Independence Avenue, S.W., Switzer Building, Room 2600, Washington, D.C. 20201, on "notice of claim for damage, injury, or death" via Standard Form 95. A copy of Plaintiffs' correspondence with completed Standard Form 95 is attached hereto as **Exhibit "A."**

5.     On or about April 25, 2016, the United States Department of Health and Human Services provided a notice of final determination of Plaintiffs' administrative claim to Plaintiffs' counsel. In this letter, Plaintiffs' claim was expressly denied. A copy of this correspondence is

2

attached hereto as **Exhibit "B."** In light of the denial of this administrative claim, Plaintiffs are now permitted to file these claims.

## THE PARTIES

6.      Plaintiff-mother, Amaris Ramos, Co-Administrator of the Estate of Pedro Arce, Jr., is an adult citizen of the Commonwealth of Pennsylvania, residing therein at 232 Meridian Avenue, Scranton, PA 18504.

7.      Plaintiff-father, Pedro Arce, Co-Administrator of the Estate of Pedro Arce, Jr., is an adult citizen of the Commonwealth of Pennsylvania, residing therein at 232 Meridian Avenue, Scranton, PA 18504.

8.      Pedro Arce, Jr., Plaintiffs' son, was born on August 2, 2006 and died intestate on April 10, 2013 at St. Christopher's Hospital in Philadelphia, Pennsylvania.

9.      Pedro Arce, Jr. is survived by his parents and natural guardians, Amaris Ramos and Pedro Arce, who are the beneficiaries under the Wrongful Death Act, 42 Pa. C.S. 8301.

10.     Letters of Administration were granted to Amaris Ramos and Pedro Arce by the Register of Wills in and for the County of Lackawanna,  in the Commonwealth of Pennsylvania, on August 11, 2014, attached hereto as **Exhibit "C,"** duly and legally appointing Amaris Ramos and Pedro Arce, as Co-Administrators of the Estate of Pedro Arce, Jr., deceased.

11.     Defendant, United States of America d/b/a Scranton Primary Health Center, Inc., (hereinafter "SPHC"), is a state-chartered health care facility.  SPHC is a Health Center Program grantee under 42 U.S.C. 254b and a deemed Public Health Service Employee under 42 U.S.C. 233(g)-(n).  SPHC is a state agency within the meaning of 28 U.S.C. § 2674.  SPHC maintains its principal place of business at 959 Wyoming Avenue, Scranton, PA 18509.  SPHC includes Cecilia R. Ventura, M.D. ["Dr. Ventura"], as well as other employees, actual agents, apparent

3

agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this Defendant is for the professional negligence of its employees, actual agents, apparent agents, ostensible agents, workmen, and/or servants, including Dr. Ventura.

12.    At all times relevant hereto, Dr. Ventura acted in the capacity of Pedro Arce, Jr.'s treating physician and was the actual, apparent or ostensible agent, servant, and/or employee of Defendant, United States of America. Dr. Ventura's medical care and treatment of Pedro Arce, Jr. was within the scope of her agency, master-servant and/or employment relationship with Defendant, United States of America. A Certificate of Merit as to Defendant, United States of America, is attached hereto as **Exhibit "D."**

13.    Defendant, Moses Taylor Hospital, was at all times relevant hereto, a corporation or other jural entity organized according to and existing under the laws of the Commonwealth of Pennsylvania, with a business address at 700 Quincy Avenue, Scranton, PA 18510. Plaintiffs are asserting a professional liability claim against this defendant directly and for the negligence of its agents, servants and/or employees as stated more fully herein. A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "E."**

14.    Defendant, Scranton Quincy Hospital Company, LLC, was all times relevant hereto, a corporation or other jural entity organized according to and/or existing under and pursuant to the laws of the Commonwealth of Pennsylvania, which operates, owns, maintains, and/or controls Moses Taylor Hospital. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees as stated more fully herein. A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "F."**

4

15.     Defendant, Michael Ryan, D.O. ["Dr. Ryan"], was at all times relevant hereto a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, with medical specialization in pediatric infectious disease, and a professional address at, among other places, c/o Geisinger Clinic, 100 North Academy Avenue, Danville, Pennsylvania 17822.. Plaintiffs are asserting a professional liability claim against this defendant. A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "G."**

16.     Defendant, Geisinger Community Medical Center ["Geisinger CMC"], was at all times relevant hereto, a professional healthcare facility and corporation or other jural entity, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 1800 Mulberry Street, Scranton, PA 18510. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees, as stated more fully herein. A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "H."**

17.     Defendant, Geisinger Medical Center, was at all times relevant hereto, a professional healthcare facility and corporation or other jural entity, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address and an address at which it was regularly conducting business at 100 North Academy Avenue, Danville, PA 17822. Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees, as stated more fully herein. A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "I."**

5

18.    Defendant, Geisinger Clinic, was at all times relevant hereto, the owner and operator of a multi-specialty group medical practice which provides medical staff for patient care, including Pedro Arce, Jr., which is organized according to, and existing under the laws of the Commonwealth of Pennsylvania.  Geisinger Clinic is headquartered at 100 North Academy Avenue, Danville, Pennsylvania 17822.  Plaintiffs are asserting a professional liability claim against this defendant for the negligence of its agents, servants and/or employees, as stated more fully herein.  A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "J."**

19.    Defendant, Anthony Sauter, M.D. ["Dr. Sauter"], was at all times relevant hereto a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania, with medical specialization in emergency medicine, and a professional address at 700 Quincy Avenue.  Plaintiffs are asserting a professional liability claim against this defendant.  A Certificate of Merit regarding the medical care, treatment, and practice of this defendant is attached hereto as **Exhibit "K."**

20.    At all times relevant hereto, Dr. Ryan acted in the capacity of Pedro Arce, Jr.'s treating physician and was the actual, apparent or ostensible agent, servant, and/or employee of Geisinger Medical Center and/or Geisinger Clinic.  Dr. Ryan's medical care and treatment of Pedro Arce, Jr. was within the scope of his agency, master-servant and/or employment relationship with Geisinger Medical Center and/or Geisinger Clinic..

21.    At all times relevant hereto, Dr. Sauter acted in the capacity of Pedro Arce, Jr.'s treating physician and was the actual, apparent or ostensible agent, servant, and/or employee of Moses Taylor Hospital and/or Scranton Quincy Hospital Company, LLC.  Dr. Sauter's medical care and treatment of Pedro Arce, Jr. was within the scope of his agency, master-servant and/or

employment relationship with Moses Taylor Hospital and/or Scranton Quincy Hospital Company, LLC.

22.    At all times relevant hereto, *nhtunnuch* , Randy Bell, PA-C ["PA Bell"], and Champak Dedhia, M.D. ["Dr. Dedhia"] were the actual, apparent or ostensible agents, servants, and/or employees of Moses Taylor Hospital and/or Scranton Quincy Hospital Company, LLC and were acting within the scope of their professional duties for Moses Taylor Hospital and/or Scranton Quincy Hospital Company, LLC while providing medical care and treatment to Pedro Arce, Jr.

23.    At all times relevant hereto, Richard Lambert, M.D. ["Dr. Lambert"], Elizabeth E. Scarlett, M.D. ["Dr. Scarlett"], Lisa Holtz, M.D. ["Dr. Holtz"], Dean R. Focht, III, M.D. ["Dr. Focht"], Howard B. Pride, M.D. ["Dr. Pride"], and Lela W. Brink, M.D. ["Dr. Brink"], acted in the capacity of Pedro Arce, Jr.'s treating physicians and were the actual, apparent or ostensible agents, servants, and/or employees of Geisinger Medical Center and/or Geisinger Clinic and were acting within the scope of their professional duties for Geisinger Medical Center and/or Geisinger Clinic while providing medical care and treatment to Pedro Arce, Jr.

24.    All Defendants herein are vicariously liable to Plaintiffs for the negligent acts and omissions of those persons and/or entities whose conduct was under their supervision, control or right of control, and which conduct directly and proximately caused Plaintiff's injuries and losses.

25.    At all times relevant hereto, some or all Defendants may have been agents of each other.

**OPERATIVE FACTS**

26. Pedro Arce, Jr. was born on August 2, 2006.

27. On January 29, 2013, accompanied by his mother, Amaris Ramos, Pedro Arce, Jr., 6.5 years old, presented to the Moses Taylor Hospital Emergency Department ["ED"].

28. On January 29, 2013, Pedro Arce, Jr. presented to the Moses Taylor Hospital ED with a five-day history of intermittent fever and cough associated with sore throat and congestion.

29. On January 29, 2013, Pedro Arce, Jr. was evaluated in the ED by PA Bell and/or Dr. Sauter.

30. On January 29, 2013, while in the ED, Pedro Arce, Jr. was active, appeared non-toxic, had a fever of 101.8 degrees, pulse of 140, O2 saturation of 96% on room air, and crackles in his right lower lobe on exam.

31. On January 29, 2013, a chest x-ray ["CXR"] was interpreted by PA Bell and/or Dr. Sauter as showing [illegible handwriting] ("RML [or RUL] Pneumonia") in Pedro Arce, Jr.'s right lung.

32. On January 29, 2013, at approximately 5:10 p.m., PA Bell and/or Dr. Sauter discharged Pedro Arce, Jr. to home with a diagnosis of [illegible handwriting] ("Acute RML (or RUL) Pneumonia") for which he was prescribed the antibiotic Cefdinir [a.k.a. "Omnicef"] and an inhaler.

33. On January 29, 2013, Moses Taylor Hospital provided Amaris Ramos with a discharge instruction sheet that stated: "If X-rays were taken, they will be reviewed by a radiologist within 24 hours. You will be notified if his interpretation of the films requires a change in your treatment."

8

34.     On January 29, 2013, at 5:06 p.m., Dr. Dedhia, a radiologist, dictated his interpretation of Pedro Arce, Jr.'s CXR as: "infiltrates in the right lower lobe, right middle lobe and left lower lobe are consistent with bilateral pneumonia."

35.     On January 29, 2013, despite Dr. Dedhia's dictated impression that Pedro Arce, Jr. had findings of bilateral (multilobar) pneumonia on his CXR, Pedro Arce, Jr. was discharged to home with a 10-day prescription for the antibiotic, Cefdinir.

36.     Upon information and belief, on January 29, 2013, PA Bell and/or Dr. Sauter prescribed Cefdinir to treat what they believed was Pedro Arce, Jr.'s unilateral (unilobar) pneumonia.

37.     On January 29, 2013, Amaris Ramos contemporaneously witnessed her son's negligent medical treatment.

38.     On January 30, 2013, Pedro Arce, Jr. began treatment with Cefdinir.

39.     Cefdinir/Omnicef is a cephalosporin antibiotic that does not provide coverage for the treatment of atypical pneumonias, including Mycoplasma pneumonia.

40.     On January 30, 2013, at 09:17 a.m., Dr. Dedhia electronically signed his dictated January 29, 2013 CXR report with his impression that Pedro Arce, Jr. had "bilateral pneumonia."

41.     On January 31, 2013, *nnbennieh*, on behalf of Moses Taylor Hospital's ED, reviewed and acknowledged Dr. Dedhia's dictated January 29, 2013 CXR report on Pedro Arce, Jr. and documented that Pedro Arce, Jr.'s diagnosis was "pneumonia."

42.     Subsequent to *nnbennieh*,'s January 31, 2013 review of Pedro Arce, Jr.'s January 29, 2013 CXR reading by Dr. Dedhia, no one contacted Pedro Arce, Jr.'s family, Dr. Sauter, or PA-Bell to notify them of the discrepancy, as the radiologist identified a bilateral

(multilobar) pneumonia, not the unilateral (unilobar) pneumonia identified by PA Bell and/or Dr. Sauter, for which different treatment was indicated.

43.     On or about January 31, 2013, Moses Taylor Hospital failed in its non-delegable duty to Pedro Arce, Jr. to have adequate rules and policies in place and/or to sufficiently enforce its rules and policies to ensure appropriate communication and follow up of Pedro Arce, Jr.'s management given the discrepancy between Pedro Arce, Jr.'s initial CXR interpretation by the Emergency Department providers, Dr. Sauter and/or PA Bell, and the radiologist, Dr. Dedhia.

44.     On February 4, 2013, accompanied by his father, Pedro Arce, Pedro Arce, Jr. presented back to the Moses Taylor Hospital ED with complaints of a continued non-productive cough and fever despite taking the Cefdinir antibiotic for "possible pneumonia."

45.     On February 4, 2013, Pedro Arce, Jr. was alert and well-appearing and was evaluated in the ED by PA Pucilowski and/or Dr. Novroski.

46.     On February 4, 2013, while in the ED, Pedro Arce, Jr. had a pulse of 137, pulse ox of 96% and 99% on room air, a fever of 101.1 degrees, and inferior rhonchi on exam.

47.     On February 4, 2013, Pedro Arce, Jr. had a repeat CXR performed at Moses Taylor Hospital that revealed a bilateral pneumonia.

48.     On February 4, 2013, PA Pucilowski and/or Dr. Novroski documented the review of Pedro Acre, Jr.'s CXR results and a plan to change his antibiotic to clarithromycin [a.k.a. "Biaxin"].

49.     Clarithromycin/Biaxin is a macrolide antibiotic used to treat atypical pneumonias, including Mycoplasma pneumonia.

50.     On February 4, 2013, PA Pucilowski and/or Dr. Novroski gave Pedro Arce, Jr.'s father instructions to stop the Cefdinir and begin the Biaxin "tomorrow."

10

51.     On February 4, 2013, PA Pucilowski and/or Dr. Novroski gave Pedro Arce, Jr. a written prescription for Clarithromycin/Biaxin and discharged him to home at 10:55 p.m. with verbal instructions to follow up with Pedro Arce, Jr.'s pediatrician the next morning.

52.     On February 5, 2013, at 09:00 a.m., accompanied by his father, Pedro Arce, Pedro Arce, Jr. was seen by Dr. Ventura at the Scranton Primary Health Care Center.

53.     On February 5, 2013, Dr. Ventura was aware that Pedro Arce, Jr., had been seen in the Moses Taylor Hospital ED the night before for a fever and cough, had a CXR, and was given a prescription.

54.     On February 5, 2013, Dr. Ventura documented that Pedro Arce, Jr. had a hacking cough, fever of 100.8 degrees, and bilateral anterior and posterior lung crackles on exam, but did not document any other vital signs or oxygen saturation.

55.     On February 5, 2013, Dr. Ventura diagnosed Pedro Arce, Jr. with "acute upper respiratory infections," "asthma with acute exacerbation," and "acute serious otitis media."

56.     On February 5, 2013, Dr. Ventura's diagnoses on Pedro Arce, Jr. did not include pneumonia.

57.     On February 5, 2013, Dr. Ventura called in prescriptions to a pharmacy for an additional 10 days of Cefdinir and two nebulizer solutions for Pedro Arce, Jr. and instructed his father to continue having him take the Cefdinir, not the Biaxin.

58.     On February 5, 2013, Dr. Ventura discharged Pedro Arce, Jr. to home with no scheduled follow-up.

59.     On February 5, 2013, Pedro Arce contemporaneously witnessed his son's negligent medical treatment in Dr. Ventura's office.

11

60. On February 5, 2013, as instructed, Pedro Arce picked up the new prescriptions, including the Cefdinir, called in by Dr. Ventura, and did not fill the prescription for Biaxin.

61. On February 5, 2013, at 11:19 a.m., Dr. Cutillo, a radiologist on behalf of Moses Taylor Hospital, interpreted Pedro Arce, Jr.'s February 4, 2013 CXR as: "right middle and lower and left lower lobe pneumonia and atelectasis without significant change from January 29, 2013."

62. On February 6, 2013, at 12:30 a.m., *nαθειχιeθ*, on behalf of Moses Taylor Hospital's ED, reviewed and acknowledged Dr. Cutillo's dictated February 4, 2013 CXR report on Pedro Arce, Jr.'s and documented that Pedro Arce, Jr.'s diagnosis was "pneumonia."

63. On February 6, 2013, at noon, Pedro Arce, Jr.'s mother took him back to Dr. Ventura's office in severe respiratory distress with wheezing and a persistent dry, hacking cough that had gradually worsened.

64. On February 6, 2013, Dr. Ventura documented that Pedro Arce, Jr. had been seen in the ED two weeks ago, was diagnosed with pneumonia, and was discharged with a 10-day prescription for Cefdinir.

65. On February 6, 2013, Dr. Ventura also documented that Pedro Arce, Jr. was seen in the ED again three days ago, was given a prescription for Biaxin that was filled but not picked up by his father, and she provided a new prescription for Omnicef 250 mg bid that the father was advised to continue.

66. On February 6, 2013, Pedro Arce, Jr. was described by Dr. Ventura as "very ill appearing" and her physical exam included bilateral anterior and posterior scattered rales, fever of 101.0 degrees, and severe respiratory distress for which she treated him with nebulizers and a dose of the antibiotic Ceftriaxone [a.k.a. "Rocephin"].

12

67. Ceftriaxone/Rocephin, like Cefdinir/Omnicef, is a cephalosporin antibiotic that does not provide coverage for the treatment of atypical pneumonias, including Mycoplasma pneumonia.

68. On February 6, 2013, Dr. Ventura diagnosed Pedro Arce, Jr. with bacterial pneumonia and admitted him to Geisinger CMC, where he was admitted at 2:32 p.m., for treatment and observation.

69. On February 6, 2013, Amaris Ramos contemporaneously witnessed her son's negligent medical treatment in Dr. Ventura's office.

70. On February 6, 2013, at 4:42 p.m. and 5:36 p.m. respectively, Dr. Ventura's office accepted Pedro Arce, Jr.'s Moses Taylor Hospital CXR reports performed on January 29, 2013 and February 4, 2013, both of which revealed bilateral (multilobar) pneumonia. Dr. Ventura initialed each of these reports.

71. On February 6, 2013, at 6:36 p.m., Dr. Ventura dictated Pedro Arce, Jr.'s admitting History and Physical Exam and noted he was diagnosed with pneumonia about 2 weeks ago in the emergency room, was treated with antibiotics including the Omnicef she prescribed the day before, and included nothing about his two recent CXR results with bilateral (multilobar) pneumonia identified by the radiologists.

72. On February 6, 2013, despite approximately seven days of treatment with Cefdinir for Pedro Arce, Jr.'s pneumonia, during which his condition worsened, Dr. Ventura's admitting orders included treatment with Rocephin, but not a macrolide antibiotic or other antibiotic to cover atypical pneumonias, including Mycoplasma pneumonia.

73. On February 7, 2013, at 10:00 a.m., Carole Wilson, CRNP ["CRNP Wilson"], on Dr. Ventura's behalf, ordered a stat CXR and CT scan of Pedro Arce, Jr.'s abdomen and pelvis

and consulted Laura Shaderowfsky, M.D. ["Dr. Shaderowfsky"], a hospitalist pediatrician at Geisinger CMC.

74.    On February 7, 2013, at 12:52 p.m., a CT scan of Pedro Arce, Jr.'s abdomen and pelvis ordered for severe abdominal pain and interpreted by Burton Marks, M.D., a radiologist, revealed no intra-abdominal pathology to explain his abdominal pain, but did reveal "evidence of a right middle lobe, left lower lobe and lingular division pneumonia."

75.    On February 7, 2013, Dr. Shaderowfsky wrote a consult note in which she documented that per Dr. Ventura's verbal report, Pedro Arce, Jr.'s CXR performed at Moses Taylor "showed pneumonia," with no documenation that Dr. Ventura informed her of the bilateral (multilobar) pneumonia seen on prior CXRs.

76.    On February 7, 2013, in that same consult note, Dr. Shaderowfsky documented that Pedro Arce, Jr. had bilateral crackles halfway up his lungs and had an abdominal and pelvic CT scan that revealed no intra-abdominal surgical pathology.

77.    On February 6-7, 2013, while admitted to Geisinger CMC, Pedro Arce, Jr.'s condition significantly worsened and included the development of severe abdominal pain, a rash, clinical signs of severe infection, and an increase in his respiratory rate from 40 on admission to 88 breaths per minute at 8:00 a.m. the following morning.

78.    On February 6-7, 2013, while admitted to Geisinger CMC, Dr. Ventura did not recognize that Pedro Arce, Jr. had a bilateral (multilobar) pneumonia and/or failed to inform Dr. Shaderowfsky of this finding.

79.    On February 6-7, 2013, while admitted to Geisinger CMC, Dr. Ventura failed to treat Pedro Arce, Jr. with a macrolide antibiotic or other antibiotic that covers atypical

14

pneumonias, including Mycoplasma pneumonia, that were indicated for the treatment of a bilateral (multilobar) and/or atypical pneumonia in a 6 year-old child.

80.    On February 6-7, 2013, while admitted to Geisinger CMC, Dr. Ventura failed to treat Pedro Arce, Jr. with a macrolide antibiotic or other antibiotic that covers atypical pneumonias, including Mycoplasma pneumonia, indicated for the treatment of a pneumonia that had not responded to treatment with Cefdinir and Rocephin.

81.    On February 7, 2013, by approximately 2:30 p.m., Dr. Shaderowfsky ordered Pedro Arce, Jr.'s transfer to the service of Dr. Ryan at Geisinger Medical Center in Danville for his worsening respiratory condition and a concern for Kawasaki Disease.

82.    On February 6-7, 2013, Pedro Arce, Jr.'s parents, Amaris Ramos and Pedro Arce, contemporaneously witnessed their son's negligent medical treatment as described above, and also his deteriorating medical condition while he was admitted to Geisinger CMC.

83.    On February 7, 2013, at approximately 7:00 p.m., upon transfer and arrival to Geisinger Medical Center in Danville, Dr. Ryan became Pedro Arce, Jr.'s attending physician.

84.    On February 7, 2013, Dr. Ryan documented that Pedro Arce, Jr. was previously diagnosed with pneumonia that was treated with Omnicef, was admitted the day before to Geisinger CMC with a CXR that showed a "RML infiltrate" for which he was given IV steroids and Ceftriaxone, had a CT scan of his abdomen that was "okay," had a repeat CXR with a "small infiltrate in the RML" that "does not look like the cause of fever for 2 weeks," and his plan was to hold antibiotics for now and obtain Mycoplasma titers and blood cultures.

85.    On February 7, 2013, Colby R. Wesner, D.O. ["Dr. Wesner"], a resident under Dr. Ryan's supervision, documented that Pedro Arce, Jr. was treated with Omnicef for pneumonia beginning 10 days before, had a fever and non-productive cough for which he was

evaluated multiple times with no change in his management, was admitted to Geisinger CMC the day before with a CXR that showed a RML pneumonia for which he was treated with Rocephin and IV steroids, and has findings on CXR and CT concerning for pneumonia with additional manifestations that could be caused by Mycoplasma pneumonia or the development of Stevens Johnson Syndrome ["SJS"].

86.     The most important initial treatment of SJS is to remove the cause or potential cause(s), and, if that cause is thought to be infectious, treating the infection with the appropriate antibiotic.

87.     Mycoplasma pneumonia is a well-known infectious cause of SJS.

88.     On February 7, 2013, Dr. Wesner, on Dr. Ryan's behalf, ordered Mycoplasma pneumoniae titers on Pedro Arce, Jr., but did not put him on any antibiotics to cover Mycoplasma pneumonia.

89.     On February 7, 2013, while Dr. Ryan was aware that Pedro Arce, Jr. was a 6.5 year-old child who had been diagnosed with community acquired pneumonia more than one week ago that had not responded to treatment with cephalosporin antibiotics that did provide coverage for Mycoplasma pneumonia, and he suspected possible Mycoplasma pneumonia as the cause of Pedro Arce, Jr.'s pneumonia, as well as the possible development of SJS, he failed to provide appropriate antibiotic coverage for Mycoplasma.

90.     On February 8, 2013, at or about 01:07 a.m., Keith William Morley, M.D. ["Dr. Morley"], an intern under Dr. Ryan's supervision, documented that Pedro Arce, Jr.'s CXR and CT scan revealed a "focal infiltrate." He did not document the bilateral pneumonia identified by radiologists on Pedro Arce, Jr.'s prior CXRs and CT scan.

16

91.     On February 8, 2013, at or about 03:23 a.m., Dr. Ryan documented that Pedro Arce, Jr. had an abnormal CXR and possible SJS, but did not document his history of bilateral pneumonia found on prior CXRs and CT scan.

92.     On February 8, 2013, at or about 03:23 a.m., Dr. Ryan documented his plan to start Pedro Arce, Jr. on another antibiotic, Meropenem.

93.     Meropenem is another antibiotic that does not cover Mycoplasma or atypical pneumonias.

94.     On February 8, 2013, at or about 03:23 a.m., despite Dr. Ryan's suspicion that Pedro Arce, Jr. could have Mycoplasma pneumonia and/or SJS, and his knowledge that he had not responded to other antibiotics that did not cover Mycoplasma, he did not put him on a macrolide antibiotic or other antibiotic that would cover Mycoplasma.

95.     On February 8, 2013, at 03:53 a.m., Pedro Arce, Jr.'s CT scan performed on February 7, 2013 at Geisinger CMC was uploaded at GMC and interpreted as showing "consolidation of the right middle lobe with patchy consolidation of the left lingular segment and left lower lobe" for which the impression included "bibasilar airspace consolidation concerning for pneumonia."

96.     On February 8, 2013, at 03:53 a.m., Pedro Arce, Jr.'s CXR performed on February 7, 2013 at Geisinger CMC, was similarly uploaded at GMC and interpreted as "basilar airspace opacities."

97.     On February 8, 2013, at approximately 05:00 a.m., Pedro Arce, Jr. was transferred to the PICU for increasing respiratory distress under the care of Dr. Lambert, a pediatric critical care attending.

98.     On February 8, 2013, at or about 05:16 a.m., Dr. Wesner, on behalf of Dr. Ryan, documented: "there is certainly clinical evidence of pneumonia on imaging, but his lung exam is rather clear," "Mycoplasma titers have been sent and are pending," and, "consider adding Zithromax for Mycoplasma coverage."

99.     Zithromax [a.k.a. "azithromycin"], like clarithromycin/Biaxin, is a macrolide antibiotic that covers the atypical pneumonias, including Mycoplasma pneumonia.

100.    On February 8, 2013, at or about 08:06 a.m., Lora Ruth Spiller, M.D. ["Dr. Spiller"], a resident under the supervision of Dr. Lambert, and/or Dr. Lambert, documented that Pedro Arce, Jr.'s February 7, 2013 CXR revealed "patchy consolidation in the right middle lobe and subtle opacity at the left lung base," his February 7, 2013 CT scan revealed "bibasilar airspace consolidation concerning for pneumonia," his vital signs and inflammatory markers were not consistent with bacteremia, he was developing a diffuse rash, and per Infectious Disease, the plan was to continue the Meropenem and await the Mycoplasma titers.

101.    On February 8, 2013, at or about 4:12 p.m., Mary Lisman, a medical student under Dr. Ryan's supervision, and/or Dr. Ryan, documented that Pedro Arce, Jr. was lethargic, was suspected of having Kawasaki Disease or SJS, has laboratory evidence of pancreatitis, and had evidence of Middle Lobe pneumonia on CXR with Mycoplasma pneumoniae titers pending. There was no documentation of the bilateral pneumonia found on prior CXRs and CT scan.

102.    On February 8, 2013, at or about 6:45 p.m., Matthew Lee Palmer, M.D. ["Dr. Palmer"], a resident under the supervision of Dr. Pride, a dermatologist, and/or Dr. Pride, documented that Pedro Arce, Jr. had a diffuse rash with papules, vesicles, and prominent mucous membrane involvement with histology on a chest wall biopsy just performed by Dr. Pride consistent with SJS/TEN [Toxic Epidermal Necrolysis].

18

103. On February 8, 2013, at or about 6:45 p.m., Dr. Palmer and/or Dr. Pride also documented that this was very early in the course of Pedro Arce, Jr.'s SJS/TEN and "given his concurrent pulmonary involvement, Mycoplasma pneumonia would be a potential trigger high on the list."

104. On February 8, 2013, at or about 6:45 p.m., Dr. Palmer and/or Dr. Pride also documented that while the use of steroids to treat SJS is controversial in the medical literature, "patients with Mycoplasma pneumonia do seem to benefit from a short course of steroids."

105. On February 8, 2013, while Dr. Ryan was concerned Pedro Arce, Jr. could have Mycoplasma pneumonia and SJS, and Dr. Pride's documented impression was that Mycoplasma pneumonia was high on the list of causes of SJS, Dr. Ryan failed to provide appropriate antibiotic coverage for Mycoplasma.

106. On February 8, 2013, at or about 11:23 p.m., Elizabeth E. Linkenheil, D.O., a resident under the supervision of Dr. Scarlett, a pediatric critical care attending, and/or Dr. Scarlett, documented that Pedro Arce, Jr. was started on CPAP for increasing respiratory distress, had patchy bibasilar opacities on CXR, and the presumed diagnosis had begun to change to SJS/TEN with potential Mycoplasma pneumonia given the significant pulmonary involvement.

107. On February 8, 2013, at or about 11:23 p.m., Dr. Scarlett also documented that Infectious Disease had recommended continuing Pedro Arce, Jr. on Meropenem while awaiting the results of the cultures and Mycoplasma titers.

108. On February 8, 2013, Dr. Ryan and Pedro Arce, Jr.'s other medical providers, Dr. Scarlett, Dr. Lambert, and Dr. Pride, failed to provide appropriate antibiotic coverage for Mycoplasma.

19

109.    On February 9, 2013, at 04:57 a.m., a CXR ordered by Dr. Lambert for "respiratory distress and sepsis", revealed "worsening bilateral perihilar alveolar opacities."

110.    On February 9, 2013, at or about 3:55 p.m., at which point Pedro Arce, Jr. had a diffuse, painful, vesicular rash over much of his body, including blisters on his penis and penile mucosa, Dr. Pride documented that Pedro Arce, Jr.'s had SJS for which "Mycoplasma would unify all of his symptoms."

111.    On February 9, 2013, at or about 4:02 p.m., Dr. Focht, a pediatric gastroenterologist, documented that (1) Pedro Arce, Jr. had an increased lipase indicative of pancreatitis and (2) there is a known association between pancreatitis and Mycoplasma.

112.    On February 9, 2013, at or about 6:28 p.m., Katherine Marie Moyer, D.O. ["Dr. Moyer], a resident under the supervision of Dr. Brink, a pediatric critical care attending, and/or Dr. Brink, documented that due to Pedro Arce, Jr.'s lung involvement, the most likely cause of his SJS is Mycoplasma, and, per Infectious Disease's recommendation, the Meropenem antitibiotic is to be continued until the Mycoplasma titer results are back.

113.    On February 9, 2013, despite Dr. Ryan's concern that Pedro Arce, Jr. could have Mycoplasma pneumonia and SJS, and the documented concern of Mycoplasma by multiple other specialists responsible for his care, Dr. Ryan and the other physicians, Dr. Lambert, Dr. Scarlett, Dr. Brink, Dr. Focht, and Dr. Pride, failed to provide appropriate antibiotic coverage for Mycoplasma.

114.    On February 10, 2013, at or about 08:58 a.m., Dr. Ryan documented that Pedro Arce, Jr.'s "rash now extends from head to toe," his "lips have peeled," and "continue Meropenem for now."

20

115.     On February 10, 2013, at approximately 4:54 p.m., Pedro Arce, Jr.'s Mycoplasma IgM titer returned abnormally high, indicative of acute Mycoplasma infection.

116.     On February 10, 2013, at 5:18 p.m., azithromycin was first ordered to treat Pedro Arce, Jr.'s Mycoplasma pneumonia.

117.     On February 10, 2013, at about 5:23 p.m., Pedro Arce, Jr.'s Meropenem was discontinued.

118.     On February 11, 2013, Dr. Holtz documented that while Pedro Arce, Jr. had been started on azithromycin for treatment of Mycoplasma, he had tense, fluid-filled penile lesions and hematuria for which a Foley catheter was placed to prevent obstruction caused by his SJS.

119.     On February 11, 2013, Dr. Holtz also documented that Pedro Arce, Jr. had stable bilateral patchy opacities on his CXR and had SJS with signs of liver failure and pancreatitis for which Mycoplasma pneumonia was the likely cause.

120.     On February 11, 2013, despite the addition of azithromycin the day before, because Pedro Arce, Jr.'s Mycoplasma pneumonia had gone untreated for such a long period of time, his condition continued to worsen and he was transferred to A.I. DuPont Hospital in Wilmington, Delaware for liver failure.

121.     From February 7-10, 2013, Pedro Arce, Jr.'s parents, Amaris Ramos and Pedro Arce, contemporaneously witnessed their son's negligent medical treatment as described above, as well as his deteriorating medical condition while admitted to Geisinger Medical Center.

122.     At A.I. Dupont, Pedro Arce, Jr. was diagnosed with SJS most likely caused by Mycoplasma pneumonia, with Omnicef as a possible, but less likely, etiology.

123.   From February 11, 2013 to February 18, 2013, Pedro Arce, Jr. was admitted to A.I. Dupont, during which his skin condition continued to worsen and for which he required treatment at a burn center.

124.   On February 18, 2013, Pedro Arce, Jr. was transferred to St. Christopher's Hospital for Children for treatment at a burn center.

125.   From February 18, 2013 to April 10, 2013, Pedro Arce, Jr. remained at St. Christopher's, where he was treated for, among many diagnoses, SJS, progressive respiratory failure from interstitial lung disease, hypotensive shock, gastrointestinal bleeding, liver failure, renal failure, sequential organ failure, and severe bilateral corneal defects in his eyes for which he was treated with amniotic membrane grafts.

126.   On April 10, 2013, despite maximal non-conventional ventilator settings and inotropic support for progressive hypotension, Pedro Arce, Jr. died in his mother's arms.

127.   From February 11, 2013 until April 10, 2013, Pedro Arce, Jr.'s parents, Amaris Ramos and Pedro Arce, as a result of Defendants' negligence as described herein, contemporaneously witnessed their son's deteriorating medical condition, including extreme pain and suffering, followed by his death.

128.   On April 12, 2013, an autopsy on Pedro Arce, Jr.'s body revealed severe desquamative rash from Stevens-Johnson Syndrome diagnosed on biopsy, mucosal erosions – including corneal, hemorrhagic necrotizing pneumonia, liver failure and renal failure.

129.   Between January 29, 2013 and February 10, 2013, Plaintiff-mother, Amaris Ramos, contemporaneously witnessed Defendants' negligent treatment of her son, Pedro Arce, Jr., and the resulting injuries, including his pain and suffering and death.

22

130.     Between February 5, 2013 and February 10, 2013, Plaintiff-father, Pedro Arce, contemporaneously witnessed Defendants' negligent treatment of his son, Pedro Arce, Jr., and the resulting injuries, including his pain and suffering and death.

131.     As a direct and proximate result of the conduct of all Defendants, individually, jointly, severally, or in the alternative, as more fully set forth in the Counts below, Pedro Arce, Jr. was caused to suffer:

    a.      Delayed treatment of Mycoplasma pneumonia;

    b.      Inappropriate antibiotic therapy with Cefdinir/Omnicef;

    c.      Inappropriate antibiotic therapy with Rocephin;

    d.      Respiratory distress;

    e.      Stevens-Johnson Syndrome;

    f.      Severe, painful skin lesions;

    g.      Severe, painful mucosal lesions;

    h.      Severe penile lesions;

    i.      Severe eye injuries;

    j.      Pancreatitis;

    k.      Liver failure;

    l.      Renal failure;

    m.      Respiratory failure;

    n.      Severe interstitial lung disease;

    o.      Pulmonary hypertension;

    p.      Gastrointestinal bleeding;

    q.      Bladder and penile bleeding;

r.     Hemorrhagic necrotizing pneumonia;

s.     Cardiac arrest;

t.     Endotracheal intubation;

u.     All invasive procedures identified in the medical record;

v.     Pain and suffering;

w.     Fear and fright;

x.     Medical expenses;

y.     Loss of enjoyment of life and life's pleasures;

z.     Future loss of earnings and earning capacity; and,

aa.    Death

132.   The injuries to and death of Pedro Arce, Jr., as described herein, were caused solely and wholly by reason of the negligent acts and omissions of all defendants, as set forth herein, and were not caused or contributed thereto by any action or inaction of Amaris Ramos, Pedro Arce, or Pedro Arce, Jr.

133.   As a direct and proximate cause of the negligent treatment provided by Defendants, their agents, servants and/or employees as set forth in this Complaint, Plaintiffs, Amaris Ramos and Pedro Arce, as Co-Administrators of the Estate of Pedro Arce, Jr., and in their own right, claim the full measure of damages allowable under the law.

## COUNT I – NEGLIGENCE
## PLAINTIFFS v. UNITED STATES OF AMERICA

134.   The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

135.   The negligent acts and omissions of The United States of America, by and through it employees, servants, actual agents, apparent agents, ostensible agents, and/or

24

workmen, including specifically Dr. Ventura, in her medical management, care, and treatment of

Pedro Arce, Jr., as set forth in the predicate facts stated above, consisted of one or more of the

following:

a)      Failing to appropriately treat possible Mycoplasma pneumonia;

b)      Failing to appropriately treat bilateral (multilobar) pneumonia;

c)      Failing to appropriately treat atypical pneumonia;

d)      Failing to diagnose atypical pneumonia;

e)      Failing to diagnose bilateral (multilobar) pneumonia;

f)      Failing to prescribe a macrolide antibiotic or other antibiotic that covers
        Mycoplasma pneumonia on February 5, 2013;

g)      Failing to prescribe a macrolide antibiotic or other antibiotic that covers
        Mycoplasma pneumonia on February 6 or 7, 2013;

h)      Failing to discontinue Cefdinir on February 5, 2013;

i)      Prescribing additional Cefdinir on February 5, 2013;

j)      Failing to instruct Pedro Arce on February 5, 2013, to have his son,
        Pedro Arce, Jr., take the Biaxin prescribed at Moses Taylor Hospital;

k)      Advising Pedro Arce to fill the prescription for Cefdinir prescribed by her
        on February 5, 2013 and not to fill the prescription for Biaxin prescribed at
        Moses Taylor Hospital;

l)      Failing to consider Pedro Arce, Jr.'s age in determining what antibiotic to
        prescribe for his pneumonia;

m)      Failing to consider Pedro Arce, Jr.'s clinical presentation in determining
        what antibiotic to prescribe for his pneumonia;

25

n)    Failing to change to a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia on February 5, 2013 given Pedro Arce, Jr.'s failed response to Cefdinir;

o)    Failing to review and/or know that Pedro Arce, Jr.'s CXRs at Moses Taylor Hospital on January 29, 2013 and February 4, 2013 revealed a bilateral (multilobar) pneumonia;

p)    Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia in light of Pedro Arce, Jr.'s prior CXRs;

q)    Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia in light of Pedro Arce, Jr.'s clinical presentation;

r)    Failing to appreciate on February 5, 2013 that Pedro Arce, Jr. had a diagnosis of pneumonia;

s)    Failing to admit Pedro Arce, Jr. to the hospital on February 5, 2013;

t)    Diagnosing asthma as the cause of Pedro Arce, Jr.'s respiratory illness on February 5, 2013;

u)    Treating Pedro Arce, Jr. with ceftriaxone in her office on February 6, 2013;

v)    Treating Pedro Arce, Jr. with ceftriaxone at Geisinger CMC on February 6, 2013;

w)    Treating Pedro Arce, Jr. with an antibiotic at Geisinger CMC that did not cover Mycoplasma pneumonia;

x)    Failing to order a macrolide antibiotic or other antibiotic that covers

26

Mycoplasma pneumonia at any time while Pedro Arce, Jr. was admitted to Geisinger CMC;

y)    Failing to recognize and/or appropriately treat the bilateral infiltrates and bilateral (multilobar) pneumonia identified on Pedro Arce, Jr.'s February 7, 2013 CT scan;

z)    Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia in light of the bilateral infiltrates and bilateral (multilobar) pneumonia on Pedro Arce, Jr.'s February 7, 2013 CT scan;

aa)   Failing to timely obtain and review Pedro Arce, Jr.'s medical records from his Moses Taylor Hospital Emergency Department visits on January 29, 2013 and February 4, 2013;

bb)   Failing to contact Moses Taylor Hospital to determine what antibiotic was prescribed to Pedro Arce, Jr. on February 4, 2013;

cc)   Failing to contact Moses Taylor Hospital to determine Pedro Arce, Jr.'s diagnosis and treatment on February 4, 2013;

dd)   Failing to contact the pharmacy on February 5, 2013 to determine what antibiotic had been prescribed to Pedro Arce, Jr. at Moses Taylor Hospital;

ee)   Failing to appropriately advise Dr. Shaderowfsky that Pedro Arce, Jr.'s CXRs performed at Moses Taylor Hospital on January 29, 2013 and February 4, 2013 revealed bilateral (multilobar) pneumonia; and,

ff)   Failing to provide Dr. Shaderowfsky with a complete and accurate history.

27

136.    The negligence of Defendant, United States of America, as set forth herein, was a substantial contributing factor causing the injuries, damages and death of Pedro Arce, Jr.

137.    The negligence of Defendant, United States of America, as set forth herein, increased the risk of harm to Pedro Arce, Jr.

138.    As a direct and proximate result of the negligence and carelessness of Defendant, United States of America, Pedro Arce, Jr. suffered severe and catastrophic injuries that resulted in his death.

**COUNT II – NEGLIGENCE**
**PLAINTIFFS v. ANTHONY SAUTER, M.D., MOSES TAYLOR HOSPITAL**
**AND SCRANTON QUINCY HOSPITAL COMPANY, LLC**

139.    The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

140.    The negligent acts and omissions of Dr. Sauter, and through him, Moses Taylor Hospital and Scranton Quincy Hospital Company, LLC, in his medical management, care, and treatment of Pedro Arce, Jr., as set forth in the predicate facts stated above, consisted of one or more of the following:

   a)    Failing to appropriately treat possible Mycoplasma pneumonia;

   b)    Failing to appropriately treat bilateral (multilobar) pneumonia;

   c)    Failing to appropriately treat atypical pneumonia;

   d)    Failing to diagnose atypical pneumonia;

   e)    Failing to diagnose bilateral (multilobar) pneumonia;

   f)    Failing to prescribe a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, on January 29, 2013;

g)     Prescribing Cefdinir on January 29, 2013;

h)     Failing to consider Pedro Arce, Jr.'s age in determining what antibiotic to
       prescribe for his pneumonia;

i)     Failing to know that the CXR Dr. Sauter and/or PA Bell read as unilateral
       (unilobar) pneumonia on January 29, 2013 was read by Dr. Dedhia as a
       bilateral (multilobar) pneumonia before Pedro Arce, Jr. was discharged to
       home;

j)     Failing to appropriately treat with a macrolide antibiotic or other
       antibiotic that covers atypical pneumonia, including Mycoplasma
       pneumonia, on January 29, 2013, in light of Pedro Arce, Jr.'s clinical
       presentation;

k)     Failing to recognize or appropriately treat the bilateral infiltrates and
       bilateral (multilobar) pneumonia on CXR identified by Dr. Dedhia on
       January 29, 2013 with a macrolide antibiotic or other antibiotic that covers
       atypical pneumonia, including Mycoplasma pneumonia, on February 5,
       2013;

l)     Failing to follow-up on the radiologist's interpretation of Pedro Arce, Jr.'s
       January 29, 2013 CXR;

m)     Failing to appropriately respond to the discrepancy between his and/or
       PA-Bell's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR and
       Dr. Dedhia's interpretation of that CXR;

n)     Failing to properly interpret Pedro Arce, Jr.'s January 29, 2013 CXR.

29

141.    The negligence of Dr. Sauter, as set forth herein, was a substantial contributing factor causing the injuries, damages and death of Pedro Arce, Jr.

142.    The negligence of Dr. Sauter, as set forth herein, increased the risk of harm to Pedro Arce, Jr.

143.    As a direct and proximate result of the negligence and carelessness of Dr. Sauter, Pedro Arce, Jr. suffered severe and catastrophic injuries that resulted in his death.

**COUNT III – NEGLIGENCE**
**PLAINTIFFS v. MICHAEL RYAN, D.O., GEISINGER MEDICAL CENTER,**
**AND GEISINGER CLINIC**

144.    The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

145.    The negligent acts and omissions of Dr. Ryan, and through him, Geisinger Medical Center and Geisinger Clinic, in his medical management, care, and treatment of Pedro Arce, Jr., as set forth in the predicate facts stated above, consisted of one or more of the following:

a)    Failing to appropriately treat possible Mycoplasma pneumonia;

b)    Failing to appropriately treat bilateral (multilobar) pneumonia;

c)    Failing to appropriately treat atypical pneumonia;

d)    Failing to diagnose atypical pneumonia;

e)    Failing to diagnose bilateral (multilobar) pneumonia;

f)    Failing to prescribe a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia;

g)    Prescribing Meropenem instead of a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia;

h)    Failing to immediately place Pedro Arce, Jr. on a macrolide antibiotic or
      other antibiotic that covers Mycoplasma pneumonia while awaiting the
      results of the Mycoplasma titers;

i)    Failing to consider Pedro Arce, Jr.'s age in determining what antibiotic to
      prescribe for his pneumonia;

j)    Failing to timely place Pedro Arce, Jr. on a macrolide antibiotic or
      other antibiotic that covers Mycoplasma pneumonia given his failed
      response to Cefdinir and Rocephin;

k)    Failing to adequately review or obtain Pedro Arce, Jr.'s history, including
      his prior CXRs at Moses Taylor Hospital on January 29, 2013 and
      February 4, 2013 interpreted by radiologists as bilateral (multilobar)
      pneumonia;

l)    Failing to review or learn that Pedro Arce, Jr.'s prior CXR and/or CT
      scan at Geisinger CMC revealed bilateral (multilobar) pneumonia;

m)    Failing to appropriately treat with a macrolide antibiotic or other antibiotic
      that covers atypical pneumonia, including Mycoplasma pneumonia, in
      light of Pedro Arce, Jr.'s prior CXRs and CT scan;

n)    Failing to appropriately treat with a macrolide antibiotic or other antibiotic
      that covers atypical pneumonia, including Mycoplasma pneumonia, in
      light of Pedro Arce, Jr.'s clinical presentation;

o)    Treating Pedro Arce, Jr. with an antibiotic that did not cover Mycoplasma
      pneumonia;

p)    Failing to recognize and/or appropriately treat the bilateral infiltrates and

31

bilateral (multilobar) pneumonia identified on Pedro Arce, Jr.'s February 7, 2013 CT scan;

q)      Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, in light of the bilateral infiltrates and bilateral (multilobar) pneumonia on Pedro Arce, Jr.'s February 7, 2013 CT scan;

r)      Failing to timely obtain and review Pedro Arce, Jr.'s medical records from the Moses Taylor Hospital Emergency Department visits on January 29, 2013 and February 4, 2013;

s)      Failing to obtain an adequate history from Dr. Shaderowfsky and/or obtain adequate medical records to review upon taking responsibility for Pedro Arce, Jr.'s care on February 7, 2013;

t)      Failing to treat for Mycoplasma while awaiting the Mycoplasma titer results;

u)      Failing to treat for Mycoplasma until the IgM titer results returned positive;

v)      Failing to treat for Mycoplasma despite his concern or suspicion of possible Mycoplasma infection;

w)      Failing to recognize the association between Mycoplasma and Pedro Arce, Jr.'s diagnoses of pneumonia and SJS;

x)      Failing to appropriately review or discuss the findings, impressions, and/or

recommendations of Dr. Pride, Dr. Focht, Dr. Scarlett, and Dr. Brink, all of whom documented their concern with Mycoplasma as a cause of Pedro Arce, Jr.'s illness;

y)   Failing to timely and appropriately treat SJS with a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia.

146.   The negligence of Dr. Ryan, as set forth herein, was a substantial contributing factor causing the injuries, damages and death of Pedro Arce, Jr.

147.   The negligence of Dr. Ryan, as set forth herein, increased the risk of harm to Pedro Arce, Jr.

148.   As a direct and proximate result of the negligence and carelessness of Dr. Ryan, Pedro Arce, Jr. suffered severe and catastrophic injuries that resulted in his death.

## COUNT IV - NEGLIGENCE
### PLAINTIFFS v. MOSES TAYLOR HOSPITAL, AND SCRANTON QUINCY HOSPITAL COMPANY, LLC

149.   The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

150.   The negligent acts and omissions of Moses Taylor Hospital and Scranton Quincy Hospital Company, LLC, through its agents, servants, and/or employees, *natenmen* and Randy Bell, PA-C ["PA Bell"], and Champak Dedhia, M.D. ["Dr. Dedhia"], in their medical management, care, and treatment of Pedro Arce, Jr., as set forth in the predicate facts stated above, consisted of one or more of the following:

a)   Failing to appropriately treat possible Mycoplasma pneumonia;

b)   Failing to appropriately treat bilateral (multilobar) pneumonia;

c)   Failing to appropriately treat atypical pneumonia;

33

d)      Failing to diagnose atypical pneumonia;

e)      Failing to diagnose bilateral (multilobar) pneumonia;

f)      Failing to prescribe a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia;

g)      Prescribing Cefdinir on January 29, 2013;

h)      Failing to consider Pedro Arce, Jr.'s age in determining what antibiotic to prescribe for his pneumonia;

i)      Failing to know that the CXR Dr. Sauter and/or PA Bell read as unilateral (unilobar) pneumonia on January 29, 2013 was read by Dr. Dedhia as a bilateral (multilobar) pneumonia before Pedro Arce, Jr. was discharged to home;

j)      Failing to appropriately treat with a macrolide  antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, in light of Pedro Arce, Jr.'s clinical presentation;

k)      Failing to recognize or appropriately treat the bilateral infiltrates and bilateral (multilobar) pneumonia on CXR identified by Dr. Dedhia on January 29, 2013 with a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia;

l)      Failing to follow-up on the radiologist's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR;

m)      Failing to properly interpret Pedro Arce, Jr.'s January 29, 2013 CXR;

n)      Failing to timely and appropriately communicate with one another so as to

34

recognize the discrepancy in interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR by Dr. Sauter and/or PA Bell and Dr. Dedhia;

o)   Failing to notify Dr. Sauter and/or PA Bell and/or Pedro Arce, Jr.'s parents of the discrepancy in interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR by Dr. Sauter and/or PA Bell and Dr. Dedhia;

p)   Failing to notify Pedro Arce, Jr.'s parents of the need for alternative treatment given the discrepancy in interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR by Dr. Sauter and/or PA Bell and Dr. Dedhia.

151.   The negligence of Moses Taylor Hospital and Scranton Quincy Hospital Company, LLC, through its agents, servants, and/or employees, *nabernuch*, Randy Bell, PA-C ["PA Bell"], and Champak Dedhia, M.D. ["Dr. Dedhia"], as set forth herein, was a substantial contributing factor causing the injuries, damages and death of Pedro Arce, Jr.

152.   The negligence of Moses Taylor Hospital and Scranton Quincy Hospital Company, LLC, through its agents, servants, and/or employees, *nabernuch*, Randy Bell, PA-C ["PA Bell"], and Champak Dedhia, M.D. ["Dr. Dedhia"], as set forth herein, increased the risk of harm to Pedro Arce, Jr.

153.   As a direct and proximate result of the negligence and carelessness of Moses Taylor Hospital and Scranton Quincy Hospital Company, LLC, through its agents, servants, and/or employees, *nabernuch*, Randy Bell, PA-C ["PA Bell"], and Champak Dedhia, M.D. ["Dr. Dedhia"], Pedro Arce, Jr. suffered severe and catastrophic injuries that resulted in his death.

35

**COUNT V - NEGLIGENCE**
**PLAINTIFFS v. GEISINGER MEDICAL CENTER AND GEISINGER CLINIC**

154.    The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

155.    The negligent acts and omissions of Geisinger Medical Center and Geisinger Clinic, through its agents, servants, and/or employees, Richard Lambert, M.D., Elizabeth E. Scarlett, M.D., Lisa Holtz, M.D., Dean R. Focht, III, M.D., Howard B. Pride, M.D., and Lela W. Brink, M.D., in their medical management, care, and treatment of Pedro Arce, Jr., as set forth in the predicate facts stated above, consisted of one or more of the following:

a)      Failing to appropriately treat possible Mycoplasma pneumonia;

b)      Failing to appropriately treat bilateral (multilobar) pneumonia;

c)      Failing to appropriately treat atypical pneumonia;

d)      Failing to diagnose atypical pneumonia;

e)      Failing to diagnose bilateral (multilobar) pneumonia;

f)      Failing to prescribe a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia;

g)      Prescribing Meropenem instead of a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia;

h)      Failing to immediately place Pedro Arce, Jr. on a macrolide antibiotic or other antibiotic that covers Mycoplasma pneumonia while awaiting the results of the Mycoplasma titers;

i)      Failing to consider Pedro Arce, Jr.'s age in determining what antibiotic to prescribe for his pneumonia;

j)      Failing to timely place Pedro Arce, Jr. on a macrolide antibiotic or

36

other antibiotic that covers Mycoplasma pneumonia given his failed response to Cefdinir and Rocephin;

k) Failing to adequately review or obtain Pedro Arce, Jr.'s history, including his prior CXRs at Moses Taylor Hospital on January 29, 2013 and February 4, 2013 interpreted by radiologists as bilateral (multilobar) pneumonia;

l) Failing to review or learn that Pedro Arce, Jr.'s prior CXR and/or CT scan at Geisinger CMC revealed bilateral (multilobar) pneumonia;

m) Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, in light of Pedro Arce, Jr.'s prior CXRs and CT scan;

n) Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, in light of Pedro Arce, Jr.'s clinical presentation;

o) Treating Pedro Arce, Jr. with an antibiotic that did not cover Mycoplasma pneumonia;

p) Failing to recognize and/or appropriately treat the bilateral infiltrates and bilateral (multilobar) pneumonia identified on Pedro Arce, Jr.'s February 7, 2013 CT scan;

q) Failing to appropriately treat with a macrolide antibiotic or other antibiotic that covers atypical pneumonia, including Mycoplasma pneumonia, in light of the bilateral infiltrates and bilateral (multilobar) pneumonia on Pedro Arce, Jr.'s February 7, 2013 CT scan;

r)   Failing to timely obtain and review Pedro Arce, Jr.'s medical records from the Moses Taylor Hospital Emergency Department visits on January 29, 2013 and February 4, 2013;

s)   Failing to treat for Mycoplasma while awaiting the Mycoplasma titer results;

t)   Failing to treat for Mycoplasma until the IgM titer results returned positive;

u)   Failing to treat for Mycoplasma despite his or her concern with possible Mycoplasma infection;

v)   Failing to appropriately and adequately advise Dr. Ryan of his or her concern of a potential Mycoplasma infection for which antibiotic coverage for Mycoplasma was indicated;

w)   Failing to timely and appropriately treat SJS with a macrolide antibiotic;

x)   Failing to timely or adequately notify Dr. Ryan that Mycoplasma was high on the list of potential causes of Pedro Arce, Jr.'s clinical presentation;

y)   Failing to timely or adequately notify Dr. Ryan that Mycoplasma infection would provide an explanation for Pedro Arce, Jr.'s clinical presentation.

156.   The negligence of Geisinger Medical Center and Geisinger Clinic, through its agents, servants, and/or employees, Richard Lambert, M.D., Elizabeth E. Scarlett, M.D., Lisa Holtz, M.D., Dean R. Focht, III, M.D., Howard B. Pride, M.D., and Lela W. Brink, M.D., as set forth herein, was a substantial contributing factor causing the injuries, damages and death of Pedro Arce, Jr.

157.    The negligence of Geisinger Medical Center and Geisinger Clinic, through its agents, servants, and/or employees, Richard Lambert, M.D., Elizabeth E. Scarlett, M.D., Lisa Holtz, M.D., Dean R. Focht, III, M.D., Howard B. Pride, M.D., and Lela W. Brink, M.D., as set forth herein, increased the risk of harm to Pedro Arce, Jr.

158.    As a direct and proximate result of the negligence and carelessness of Geisinger Medical Center and Geisinger Clinic, through its agents, servants, and/or employees, Richard Lambert, M.D., Elizabeth E. Scarlett, M.D., Lisa Holtz, M.D., Dean R. Focht, III, M.D., Howard B. Pride, M.D., and Lela W. Brink, M.D., Pedro Arce, Jr. suffered severe and catastrophic injuries that resulted in his death.

## COUNT VI – CORPORATE NEGLIGENCE
### PLAINTIFFS v. MOSES TAYLOR HOSPITAL

159.    The preceding paragraphs of this Complaint are fully incorporated by reference as though fully set forth herein.

160.    This is a claim of corporate negligence for the breaches of Moses Taylor Hospital's non-delegable duties owed to Pedro Arce, Jr.

161.    The corporate (direct) negligence of Moses Taylor Hospital arising out of the care and treatment rendered to Pedro Arce, Jr. and which Moses Taylor Hospital had actual and/or constructive knowledge of and should have known, recognized, and ameliorated, as fully set forth in the operative facts above, consisted of one or more of the following:

a.      Failing to formulate, adopt and enforce adequate rules and policies to ensure the timely communication of a discrepancy in the interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR by the ED staff and the radiologist, Dr. Dedhia;

39

b.        Failing to formulate, adopt and enforce adequate rules to ensure a standardized system for timely communication of the radiologist's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR to the Emergency Department;

c.        Failing to formulate, adopt and enforce adequate rules to ensure a standardized system for timely communication of the Emergency Department's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR to the radiologist, Dr. Dedhia;

d.        Failing to formulate, adopt and enforce adequate rules and policies to ensure timely notification of Pedro Arce, Jr.'s family and/or Dr. Sauter or PA Bell of the discrepancy between their interpretation and the radiologist's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR report;

e.        Failing to formulate, adopt and enforce adequate rules and policies to ensure timely notification of Pedro Arce, Jr.'s family and/or Dr. Sauter or PA Bell of the need for alternative treatment in light of the discrepancy between their interpretation and the radiologist's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR report;

f.        Failing to formulate, adopt and enforce adequate rules and policies to ensure that Dr. Dedhia appropriately responded to and communicated the discrepancy between his interpretation and the Emergency Department's interpretation of Pedro Arce, Jr.'s January 29, 2013 CXR report;

g.        Failing to formulate, adopt and enforce adequate rules and policies to ensure that *nnoexxuch* took appropriate action following her review of Pedro Arce, Jr.'s January 29, 2013 CXR report so as to ensure that Pedro Arce, Jr.'s family and/or Dr. Sauter or PA Bell were notified of the discrepancy between their interpretation of the CXR in the ED and the radiologist's interpretation;

40

h.     Failing to formulate, adopt and enforce adequate rules and policies to ensure that Pedro Arce, Jr.'s treatment for a unilateral or "typical" pneumonia by Dr. Sauter and/or PA Bell, based on their interpretation of his January 29, 2013 CXR, was appropriately changed to treatment for the bilateral, multilobar, "atypical" pneumonia, identified by Dr. Dedhia.

162.     Defendant, Moses Taylor Hospital, had these failures, defects, incompetencies and procedural defects, as set forth herein, that increased the risk of harm and was a substantial contributing factor to the injuries and death sustained by Pedro Arce, Jr.

### FIRST CAUSE OF ACTION – WRONGFUL DEATH ACTION
### PLAINTIFFS, AMARIS RAMOS AND PEDRO ARCE, AS CO-ADMINSTRATORS OF THE ESTATE OF PEDRO ARCE, JR. v. ALL DEFENDANTS

163.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

164.     Plaintiffs file this Wrongful Death Action pursuant to Pa. C.S.A. §8301 et. seq. and assert entitlement to the full measure of all claims and damages set forth in said Wrongful Death Act and all supporting case law.  Amaris Ramos and Pedro Arce are the beneficiaries under the Wrongful Death Act and have been duly informed of this action.

### SECOND CAUSE OF ACTION – SURVIVAL ACTION
### PLAINTIFFS, AMARIS RAMOS AND PEDRO ARCE, AS CO-ADMINSTRATORS OF THE ESTATE OF PEDRO ARCE, JR. v. ALL DEFENDANTS

165.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

166.     As Co-Administrators on behalf of the Estate of Pedro Arce, Jr., deceased, Plaintiffs bring this action on behalf of their son's estate in accordance with the Survival Act of the Commonwealth of Pennsylvania, 42 Pa. C.S.A. §8302 et. seq. As Co-Administrators of the

Estate of Pedro Arce, Jr., deceased, Plaintiffs, Amaris Ramos and Pedro Arce, assert and claim

all damages as set forth in the Survival Act and all supporting case law.

## THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF, AMARIS RAMOS, INDIVIDUALLY v. ALL DEFENDANTS

167.    The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

168.    At various relevant times from January 29, 2013 to February 10, 2013, as

described in the preceding paragraphs, Plaintiff-mother, Amaris Ramos, was present to

contemporaneously witness (1) the negligent and careless treatment rendered by Defendants, (2)

the resulting injuries to her minor son, Pedro Arce, Jr., and (3) her son's death.

169.    As a result of the negligent acts and omissions of all Defendants as set forth in

this Complaint, Plaintiff, Amaris Ramos, suffered and will continue to suffer physical

manifestations of severe emotional distress, including but not limited to anxiety, depression,

insomnia, anger, and a sense of loss.

## FOURTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### PLAINTIFF, PEDRO ARCE, INDIVIDUALLY v. DEFENDANTS, UNITED STATES OF AMERICA, DR. RYAN, GEISINGER CMC, GEISINGER MEDICAL CENTER, AND GEISINGER CLINIC

170.    The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

171.    At various relevant times from February 5, 2013 to February 10, 2013, as

described in the preceding paragraphs, Plaintiff-father, Pedro Arce, was present to

contemporaneously witness (1) the negligent and careless treatment rendered by Dr. Ventura, Dr.

Ryan, Geisinger CMC, Geisinger Medical Center, and Geisinger Clinic, (2) the resulting injuries to his minor son, Pedro Arce, Jr., and (3) his son's death.

172.    As a result of the negligent acts and omissions of Dr. Ventura, Dr. Ryan, Geisinger CMC, Geisinger Medical Center, and Geisinger Clinic, as set forth in this Complaint, Plaintiff, Pedro Arce, suffered and will continue to suffer physical manifestations of severe emotional distress, including but not limited to anxiety, depression, insomnia, nightmares, anger, and a sense of loss.

**WHEREFORE** Plaintiffs, individually, respectfully demands judgment against all Defendants, jointly and severally, or in the alternative, in an amount in excess of local arbitration limits and in excess of Fifty Thousand Dollars ($50,000.00), exclusive of pre-judgment interest and post-judgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Date: 5/18/16                    BY: _____
THOMAS R. KLINE, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
MARK S. POLIN, ESQUIRE
Attorneys for Plaintiffs

43